Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Office: (949) 200-8755
DisabilityRights@manninglawoffice.com


Attorney for Plaintiff: DANIEL TRIPPIEDI


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TRIPPIEDI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ONTARIO, a government entity; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No. 5:20-cv-01190-AB-SHK**<br><br>**First Amended Complaint For Damages And Injunctive Relief For:**<br><br>1. **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* **as amended by the ADA Amendments Act of 2008 (P.L. 110-325).**<br><br>2. **VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq*.<br><br>3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |

//
//
//

1
COMPLAINT

Plaintiff, DANIEL TRIPPIEDI ("Plaintiff"), complains of Defendants CITY OF ONTARIO, a government entity; and Does 1-10 ("Defendants") and alleges as follows:

## PARTIES

1. Plaintiff is an adult California resident. Plaintiff is substantially limited in performing one or more major life activities because he is paraplegic, including but not limited to: walking, standing, ambulating, and sitting. As a result of these disabilities, Plaintiff requires a wheelchair for mobility. With such disabilities, Plaintiff qualifies as a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. §12102(2) as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA") and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq. At the time of Plaintiff's visits to Defendants' facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, including those set forth in this paragraph. Plaintiff is also the holder of a Disabled Person Parking Placard.

2. Plaintiff is informed and believes and thereon alleges that Defendant CITY OF ONTARIO, a government entity, owned the property located at 4000 E. Ontario Center Parkway, Ontario, CA 91764 ("Property") on or around October 20, 2019.

3. Plaintiff is informed and believes and thereon alleges that Defendant CITY OF ONTARIO, a government entity, owns the Property currently.

4. Plaintiff does not know the true name of Defendants, its business capacity, its ownership connection to the Property serving Toyota Arena ("Business"), or its relative responsibilities in causing the access violations herein complained of. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and

responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

6. This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, **("UCRA")** claims are so related to Plaintiff's federal ADA claims in that they have the same nucleus of operative facts and arising out of the same transactions, they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this court pursuant to 28 U.S.C. §1391 because the real property which is the subject of this action is located in this district and because Plaintiff's causes of action arose in this district.

8. Plaintiff has complied with the pre-filing statutory requirements by submitting a claim for damages with Defendant CITY OF ONTARIO, a government entity, on April 1, 2020.

9. On May 7, 2020, Plaintiff received a letter from Defendant CITY OF ONTARIO, a government entity, rejecting the claim for damages.

## FACTUAL ALLEGATIONS

10. Plaintiff went to the Business on or about October 20, 2019 for the dual purpose of attending his stepdaughter's graduation ceremony ("Event") and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning federal and state law.

11. The Business is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages reserved by Defendants to persons at the Property serving the Business.

13. Unfortunately, although parking spaces were one of the facilities

reserved for patrons, there were no designated parking spaces available for persons with disabilities that complied with the 2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") on October 20, 2019.

14. At that time, instead of having architectural barrier free facilities for patrons with disabilities, Defendants had and have: a lack of accessible parking spaces for individuals with disabilities to use, as Plaintiff was denied access to the accessible spaces that existed at the Property (Section 208.1; 208.3.1); and, a lack of an accessible route to coincide with the only available circulation path leading from the parking lot to the entrance of the Business (Section 206.3). Defendants also caused Plaintiff severe emotional distress by, but not limited to, denying Plaintiff the company of his family in the accessible seating area of the facility and verbally accosting Plaintiff when he sought a reasonable accommodation.

15. Plaintiff went to the Business to attend a graduation ceremony for his stepdaughter. His group consisted of he, his stepdaughter, her mother (plaintiff's wife), and his stepdaughter's two children. Plaintiff offered to drive his family in his van to save time and gas and so they all could enjoy the event together. His wife, he and the two grandchildren were all very proud of his stepdaughter for getting her degree. He assured his stepdaughter, who was very excited and nervous, that he would get her there on time and that his wife and he would take care of the grandchildren and make sure they saw their mom graduate.

16. Plaintiff had assumed prior to attending the event that he would be permitted to park in an ADA accessible parking space which he needs because he is wheelchair bound. On that day his wife also suffered from a medical condition which required her to use an orthopedic boot that her doctor prescribed for the bone condition she has. His wife was initially reluctant to go with the attending family because she was unable to walk very far and did not want her mobility issues to slow down or interfere with the family all having a good time. Plaintiff finally persuaded her to go by explaining that he would be able to park close to the entrance

and that she could share the benefit of wheelchair access that he himself would be afforded.

17. When they arrived at the Arena, Plaintiff was directed by parking attendants who told him which way to go to get to the disabled accessible parking area. He then followed the directions of the several parking attendants along the route in the Arena parking lot. When he arrived at the disabled accessible parking area, he noticed that the spaces were all blocked off with metal rails. He then asked one of the parking attendants to move one of the rails to allow him to pull into one of the ADA spaces.  In response, Plaintiff was told that by that particular attendant that this area was restricted and that Plaintiff could park in another area a little further down the way. Plaintiff explained to the attendant that he needed to park close because of his disability requiring that he use a wheelchair. The attendant then told Plaintiff that the attendant's superiors had instructed him that no one was to use the parking area in the ADA spaces near the entrance. That attendant then directed Plaintiff to another parking lot. At this point, Plaintiff let his stepdaughter disembark near the entrance so she would not have to worry about the family. He stated that to her because he had hoped that he would be able to enter together with her so he could show her where the family would be sitting which would allow her to see the family wave to her when she crossed the stage.  His stepdaughter was disappointed and concerned that she would not know where the family was seated so she could wave to her daughters.  Plaintiff apologized to his stepdaughter for the inconvenience and pushed on with the rest of the family.

18. When he arrived at the parking area where he was told he could park, Plaintiff noticed that it was already partially full and did not have any ADA spaces nor any spaces close to the entrance.  Plaintiff then had to try to park his van very close to the right side of the space to hopefully avoid being blocked in by someone parking too close for him to get to (and open) his door when the family returned to the van from the event. This created a problem for his wife and the two

5
COMPLAINT

granddaughters being able to exit from the passenger side of the van. Because of that, he had to allow them to get out of the van before he pulled into the parking space. Plaintiff then had to make the long journey to the entrance in his wheelchair with his wife supporting herself by putting her hands on his shoulders behind him, all while they kept their eyes on the kids to make sure they were all safe as they made their way to the non-accessible entrance.

19. When the family got to bottom level of the entrance, they had to travel up a long series of switchback ramps that seemed like it was at least a few hundred feet long in order to get to the upper level where they were allowing people to enter the Arena. At that moment, Plaintiff realized that the ADA spaces that had been blocked off were close to another entrance that probably had an elevator for disabled people. However, since they were not allowed to park in the disabled parking area, his family was not able to use the elevator. Instead, he had to push himself up the long switchback ramps which left him and his wife exhausted and in physical pain.

20. Once they were inside, they were then directed to a disabled seating area. The woman who was in charge of seating people in that area told Plaintiff that he could only have one person sit in that area with him unless he could get out of his chair and walk to another row of seats below the disabled sitting area. Since he is not able to do ambulate except by wheelchair, he declined. He was incredibly embarrassed as the two grandkids looked at him and were very worried that they would not be able to sit with him and their grandmother. He then explained to the attendant that she should allow him to have his three family members sit next to him especially since the two granddaughters were under ten years old and could not be separated from him and his wife. The attendant said that his wife could use one of the folding chairs and the two kids could either sit on their laps or in the seats in the rows below the disabled seating section. Plaintiff explained that this was not acceptable.

21. Another member of the Arena personnel who seemed to have more

6
COMPLAINT

authority appeared at that time and asked what the problem was. The attendant whom client had been dealing with told the apparent supervisor, "we have a troublemaker here." All of the other people in the area were looking at Plaintiff and his family, and it made him feel horribly embarrassed. Plaintiff then explained the problem to the supervisor but she still sided with the attendant. Thus, since he and his wife did not want the grandkids to sit by themselves two rows below them, his wife decided to sit with them below while he sat by himself in the disabled seating section. As a result, Plaintiff was not able to enjoy the event and coordinate the taking of photos and waving to his stepdaughter together with his family.

22. Thereafter, Plaintiff's wife had to come up to the disabled section a few times during the event to share snacks and drinks and to make sure Plaintiff was okay. That meant she had to leave the grandkids alone sitting next to strangers each time. Plaintiff felt terrible that his disability had caused so much trouble for his family members and especially his wife since she was in a boot cast. He was also embarrassed because the grandkids wanted him to be with them and their grandmother.

23. When the ceremony began, Plaintiff's stepdaughter did not have a clue where they were seated and was not able to wave to the family when she crossed the stage. A number of other disabled patrons sitting near Plaintiff were discussing the fact that they had the same complaint and commented that the accommodations at this venue for the disabled were awful. The gentleman in a wheelchair sitting next to him told Plaintiff that he was also prevented from using the ADA parking spaces and said he would never come to this place again.

24. After the event was over, Plaintiff, his wife and the grandchildren exited the Arena with the crowd. However, the family had a hard time reconnecting with the stepdaughter. They not only had to travel down the long switchback ramps again, but he had to push himself halfway around the arena to where the graduates were exiting. However, Plaintiff then encountered a curb that prevented him from

continuing along with the other people who were going to meet their graduates. This curb was near the area where the blocked off ADA parking was located. He noticed that if one of the railings that were blocking off the area were opened for him, he would be able to get around the curb and get to the area where other families had been able to go. He asked an attendant there to help by opening the railing enough to let him through. The attendant refused. Plaintiff then had to turn around and push himself all the way back to the front of the entrance with his wife and grandkids in tow, not having been able to connect with his stepdaughter. This was extremely frustrating, among other things, because there was no reason why the attendant could not allow him to pass around the railing so he could avoid the architectural barrier presented by the curb. Instead, the family had to wait until most of the people exited the parking lot before they were able to find the stepdaughter.

25. When they finally did get back to his van, there was another car parked so close to the driver's side door that Plaintiff had to wait for the owner of that other car to arrive before Plaintiff was able to get into his van.

26. The hardships, physical pain, emotional pain and embarrassment that Plaintiff and his family experienced as a result of the incompetence and unlawful policies practiced by Defendants on the day he visited the Business still affects him to this day. Plaintiff has lost the confidence that was placed in him by his family because his family was counting on him to make sure they had at least as enjoyable a time as all abled bodied persons had at the Event instead of the resistance and discrimination that the family experienced. This loss of confidence affects him constantly that he cannot provide security and safety for his family.

27. Subject to the reservation of rights to assert further violations of law after a site inspection found *infra*, Plaintiff asserts there are additional ADA violations which affect him personally.

28. Plaintiff is informed and believes and thereon alleges Defendants had no policy or plan in place to make sure that there was compliant accessible parking

reserved for persons with disabilities prior to October 20, 2019.

29. Plaintiff is informed and believes and thereon alleges Defendants have no policy or plan in place to make sure that the designated disabled parking for persons with disabilities comport with the ADAAG.

30. Plaintiff is informed and believes and thereon alleges Defendants had no policy or plan in place to compassionately address and assist patrons with disabilities.

31. Plaintiff personally encountered these barriers and the discrimination at the hands of Defendants. The presence of these barriers related to Plaintiff's disability denies Plaintiff his right to enjoy accessible conditions at public place of accommodation and invades legally cognizable interests created under the ADA.

32. The conditions identified *supra* in paragraph 14 are necessarily related to Plaintiff's legally recognized disability in that Plaintiff is substantially limited in the major life activities of walking, standing, ambulating, and sitting; Plaintiff is the holder of a disabled parking placard; and because the enumerated conditions relate to the use of the accessible parking, relate to the slope and condition of the accessible parking and accessible path to the accessible entrance, relate to the proximity of the accessible parking to the accessible entrance, and relate to the use of the accessible restroom.

33. As an individual with a mobility disability who relies upon a wheelchair, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

34. Plaintiff is being deterred from patronizing the Business and its accommodations on particular occasions, but intends to return to the Business for the dual purpose of availing himself of the goods and services offered to the public and to ensure that the Business ceases evading its responsibilities under federal and state law.

35. Upon being informed that this public place of accommodation has become fully and equally accessible, he will return within 45 days as a "tester" for the purpose of confirming their accessibility. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

36. As a result of the difficulty and emotional distress he experienced due to the inaccessible condition of the facilities of the Business, Plaintiff was denied full and equal access to the Business and Property.

37. The Defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

38. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

39. Given the obvious and blatant violation alleged hereinabove resulting in emotional distress, Plaintiff alleges, on information and belief, that there are other violations and barriers in the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, the Defendants are on notice that the Plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, the plaintiff can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

40. Without injunctive relief, Plaintiff will continue to be unable to fully access Defendants' facilities in violation of Plaintiff's rights under the ADA.

//

# FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq*. as amended by the ADA Amendments Act of 2008 (P.L. 110-325)

41. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

42. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D".

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving

the area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

43. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, access aisles shall adjoin an accessible route. 2010 Standards § 502.3. Here the failure to provide accessible parking spaces and an accessible route is a violation of the law.

44. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

45. Here, the failure to ensure that accessible facilities were available and ready to be used by Plaintiff is a violation of law.

46. Given its location and options, Plaintiff will continue to desire to patronize the Business but he has been and will continue to be discriminated against due to lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UCRA, CALIFORNIA CIVIL CODE § 51 *et seq.*

47. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

48. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendants are systematically violating the UCRA, Civil Code § 51 *et seq*.

49. Because Defendants violate Plaintiff's rights under the ADA, Defendants also violated the UCRA and are liable for damages. (Civ. Code § 51(f), 52(a).) These violations are ongoing.

50. Plaintiff is informed and believes and thereon alleges that Defendants'

actions constitute discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq*., because Defendants have been previously put on actual or constructive notice that the Business is inaccessible to Plaintiff. Despite this knowledge, Defendants maintain its premises in an inaccessible form, and Defendants have failed to take actions to correct these barriers.

## THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

52. Defendants' conduct caused Plaintiff to suffer severe emotional distress.

53. Defendants' conduct was outrageous because it goes beyond all possible bounds of decency. Defendants' conduct was outrageous because a reasonable person would regard the conduct as intolerable in a civilized community.

54. Defendants own or operate a Business that offers to the public ADA parking spaces. Defendants denied access to these parking spaces with no justification. Defendants knew that denial of access to these spaces would cause physical pain and severe emotional distress to disabled persons that were forced to park far away from access aisles in spaces that do not allow for vans with access ramps. Defendants knew that forcing disabled persons in wheelchairs to push themselves uphill on long pedestrian ramps would cause physical pain and severe emotional distress. Defendants knew that forcing disabled persons to separate from family members, some of which were underage and could not sit by themselves, would cause severe emotional distress. Defendants certainly knew that berating Plaintiff as a "troublemaker" in front of onlookers would cause severe emotional distress. Finally, Defendants knew that failing to make a simple and reasonable

accommodation to allow Plaintiff to see his just-graduated stepdaughter like all the other able-bodied patrons would cause severe emotional distress.

55. Defendants intended to cause Plaintiff's physical pain and emotional distress or Defendants acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

56. Plaintiff suffered severe emotional distress including, anguish, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

57. Defendants' conduct caused Plaintiff's severe emotional distress.

58. The acts and/or omissions of Defendants caused Plaintiff to suffer harm and economic damage. Plaintiff is informed and believes that he may incur damage in the future in amounts according to proof at trial.

59. In committing the acts and/or omissions alleged, Defendants have been guilty of malice, fraud, or oppression and, therefore, Plaintiff seeks an award of punitive damages against Defendants according to proof at trial.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

61. Because Defendants owned and/or operated a public place of accommodation, Defendants owed a duty to the general public, and to Plaintiff in particular, to use reasonable care to when accommodating disabled persons.

62. Defendants failed and neglected to use reasonable care in the accommodation of Plaintiff and his family and, as a result of their negligence and carelessness, Plaintiff suffered physical pain and was insulted and embarrassed in front of onlookers.

63. As a direct, legal, and proximate result of Defendants' negligence,

Plaintiff has sustained severe, serious, and permanent injuries to his person, all to his damage in an amount to be shown according to proof.

64. The negligent conduct as alleged was an actual and proximate cause of severe emotional distress suffered by Plaintiff.

65. That as a direct, legal and proximate result, Plaintiff has sustained severe, serious, and permanent emotional distress.

66. As direct and proximate cause of Defendant's breach, Plaintiff has sustained general and special damages to be proven at trial.

# PRAYER

**WHEREFORE, Plaintiff prays that this court award damages provide relief as follows:**

1. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), and UCRA, Civil Code § 51 *et seq.* with respect to its operation of the Business and Property; Note: Plaintiff is not invoking section 55, *et seq*, of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act (Cal. C.C. §54) at all.

2. An award of statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code;

3. In the alternative, an award of actual damages according to proof;

4. An additional award of $4,000.00 as deterrence damages for each violation pursuant to *Johnson v. Guedoir,* 218 F. Supp. 3d 1096; 2016 U.S. Dist. LEXIS 150740 (USDC Cal, E.D. 2016);

5. Treble actual damages, pursuant to Cal. Civ. Code § 52.1;

6. In the alternative, punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct; and,

7. For reasonable attorneys' fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205; California Civil Code § 52.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: December 10, 2020          **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.
Attorney for Plaintiff

16
COMPLAINT