**CARROLL, KELLY, TROTTER & FRANZEN**
**JOHN C. KELLY (SBN 125609)**
**GABRIEL M. IRWIN (SBN 210916)**
111 West Ocean Boulevard, 14th Floor
Post Office Box 226
Long Beach, California 90801-5636
Telephone No. (562) 432-5855 /
Facsimile No. (562) 432-8785
jckelly@cktflaw.com / gmirwin@cktflaw.com

Attorneys for Defendant, CITY OF ONTARIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TRIPPIEDI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ONTARIO, a government entity; and DOES 1-10, inclusive<br><br>Defendants. | CASE NO.: 5:20-CV-01190-AB-SHK<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Statement Of Uncontroverted Facts; Declaration of Michael Gibbens; Declaration of Christopher Shaw; Declaration of Gabriel M. Irwin; Proposed Order; Proposed Judgment]<br><br>DATE: August 27, 2021<br>TIME: 10:00 a.m.<br>COURTROOM: 7B<br><br>Discovery Cut-Off: 7-8-21<br>Pre-Trial Conf.: 11-19-21<br>Trial: 12-7-21<br><br>**Honorable Andre Birotte, Jr.**<br>Complaint Filed: 6-11-20 |

PLEASE TAKE NOTICE that on August 27, 2021 at 10:00 a.m. in Courtroom

7B of the United States District Court, Central District, located at 311 Spring Street in

Los Angeles, California, Defendant CITY OF ONTARIO, will and hereby does move

this Court as follows:

1.    For summary judgment in favor of Defendant CITY OF ONTARIO and against Plaintiff DANIEL TRIPPIEDI, as Plaintiff has failed to raise any genuine issue of material fact as to any claim asserted against the Defendant.

2.    For summary judgment in favor of Defendant and against Plaintiff, where the undisputed material facts clearly establish that Defendant CITY OF ONTARIO was objectively reasonable based on the totality of the circumstances.

3.    If, for any reason, summary judgment cannot be had, for partial summary judgment as to the following claims and issues:

a.  As to Plaintiff's first claim for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA"), for partial summary judgment in favor of CITY OF ONTARIO and against Plaintiff, where the undisputed material facts clearly establish Defendant did not violate the ADA;

b.  As to Plaintiff's second claim for Violations of the Unruh Civil Rights Act, California Civil Code §51 *et seq.,* for partial summary judgment in favor of CITY OF ONTARIO and against Plaintiff, where the undisputed material facts clearly establish Defendant did not violate the Unruh Civil Rights Act;

c.  As to plaintiff's third claim for Negligent Infliction of Emotional Distress ("NIED"), for partial summary judgement in favor of CITY OF ONTARIO, and against Plaintiff, where the undisputed material facts clearly establish the absence of any basis for an NIED claim in this action.

This motion is made following a pretrial conference of counsel, which took place on July 15, 2021, pursuant to U.S. District Court, Central District – Local Rule 7.3.

/ / /

/ / /

/ / /

1       This motion is made and based upon this Notice of Motion, the accompanying
2   Memorandum of Points and Authorities, the Declaration of Michael Gibbens, any
3   matters of which this Court may take judicial notice, all pleadings and papers on file in
4   this action, and upon such other matters as may be presented to the Court.

6   DATED:  July 22, 2021          CARROLL, KELLY, TROTTER &
7                                        FRANZEN

9                                    By: _____
10                                       JOHN C. KELLY
11                                       GABRIEL M. IRWIN
                                     Attorneys for Defendant CITY OF
12                                       ONTARIO

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................. 6

II.     STATEMENT OF FACTS ....................................................... 6

III.    PLAINTIFF'S CLAIMS ......................................................... 9

IV.     STATEMENT OF LAW ......................................................... 10

        A.      Federal Rules of Civil Procedure Authorize Summary Judgment as a
                Matter of Law ........................................................... 10

        B.      City of Ontario did not Violate the Americans with Disabilities Act of
                1990, 42  U.S.C. §12181 et seq. ............................... 10

        C.      City of Ontario did not Violate the Unruh Civil Rights Act, California
                Civil Code §51 et seq. .............................................. 16

        D.      Plaintiff Cannot Establish a Viable Claim for Negligent Infliction of
                Emotional Distress Based upon the Facts of this Action....................... 19

V.      CONCLUSION ................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Federal Statutes**

42 U.S.C. section 12181  ................................................................  4, 6, 9, 10

42 U.S.C. section 12182(a)  ..............................................................  10

42 U.S.C. section 12182(b)(2)(A)(ii)  .................................................  11

42 U.S.C. section 12182(b)(2)(A)(iv)  ................................................  11

42 U.S.C. section 12183(a)(2)  .........................................................  11

**State Cases**

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*  (1989) 48 Cal.3d 583  .....  19, 20

*Molien v. Kaiser Foundation Hospitals*  (1980) 27 Cal.3d 916  .........................  20, 21, 24

*Ragland v. U.S. Bank National Assn.*  (2012) 209 Cal.App.4th 182  ..............................  21

*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*  (1970) 1 Cal.3d 586  ............  20

**State Statutes**

Civ. Code, section 51  ...................................................................  4, 6, 10, 16

Civ. Code, section 51(b)  ..................................................................  16

Civ. Code, section 52(c)  ..................................................................  16

Civ. Code, section 208  ...................................................................  11

Civ. Code, section 502.3  .................................................................  11

**Other**

28 C.F.R  .................................................................................  11

28 Code of Federal Regulations § 36.211(a)  ..............................................  12

Fed. Rules of Civ. Proc., rule 56  ........................................................  10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This action has been brought by Plaintiff Daniel Trippiedi as against Defendant CITY OF ONTARIO (hereinafter "MOVING DEFENDANT" and/or "ONTARIO"). Plaintiff is a disabled individual, paralyzed from his armpits down to his feet.

This case relates to Plaintiff's attendance of a graduation ceremony at the Toyota Arena (hereinafter "Arena") in Ontario on October 20, 2019. Plaintiff contends MOVING DEFENDANT'S alleged actions on October 20, 2019 violated the Americans with Disabilities Act of 1990, and the Unruh Civil Rights Act. Plaintiff also maintains a claim for Negligent Infliction of Emotional Distress (hereinafter "NIED").

However, based upon the factual basis of this case, MOVING DEFENDANT is entitled to summary judgment as a matter of law. If, for any reason, summary judgment cannot be had, MOVING DEFENDANT is entitled to partial summary judgment as to the following claims and issues:

a.    As to Plaintiff's first claim for violations of the Americans with Disabilities Act of 1990, 42   U.S.C. §12181 et seq. as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA"), where the undisputed material facts clearly establish Defendant did not violate the ADA;

b.    As to Plaintiff's second claim for Violations of the Unruh Civil Rights Act, California Civil Code §51 et seq., where the undisputed material facts clearly establish Defendant did not violate the Unruh Civil Rights Act;

c.    As to plaintiff's third claim for Negligent Infliction of Emotional Distress ("NIED"), where the undisputed material facts clearly establish the absence of any basis for an NIED claim in this action.

**II.    STATEMENT OF FACTS**

Plaintiff contends he visited the Toyota Arena in ONTARIO on October 20, 2019, in order to attend his step-daughter Claudia Uribe's graduation. On the date in

question, Plaintiff traveled to the Toyota Arena with Ms. Uribe, his wife Glendy Trippiedi, and his Ms. Uribe's two children.

Plaintiff contends when they arrived at the Arena, he was directed by parking attendants to the disabled parking areas. When he encountered the first bank of accessible parking stalls, adjacent to the Arena administrative offices, Plaintiff contends the spaces were all blocked off with metal rails.

These eight disabled parking stalls were blocked off as part of the standard arena configuration/set-up for graduation events. The purpose of blocking the eight disabled parking stalls was to create a secure and safe space in the parking lot immediately outside the arena where graduates could gather following the graduation ceremony. Notably, for any event where the Arena staff blocks off the eight disabled parking spaces in question in this case, eight or more additional disabled parking spaces are created in the Northeast parking area of the Arena. This was the case on October 20, 2019.

Accordingly, despite the eight ADA/disabled parking spaces which were blocked off on the date in question, there were a total of no less than 31 disabled parking spaces available in Lots A1 and A2 at the Arena on October 20, 2019. There were also an additional 4 disabled parking spaces available in Lot C2 at the Arena. An additional 10 disabled parking spaces were also available in Lot E2 of the Arena. Further, there were an additional 23 disabled parking spaces available in lot F5 at the Arena. All told, on October 20, 2019, a total of no less than 68 disabled parking spaces were available at the Arena to Plaintiff and other disabled Arena patrons for the graduation event.

Plaintiff contends after having a brief discussion with a parking attendant at the location of the eight spaces which were blocked off, he was directed to travel towards another parking area at the Arena. After letting his stepdaughter disembark near the Arena entrance, Plaintiff then drove to another parking area, which Plaintiff contends was already partially full and did not have any ADA spaces nor any spaces close to the entrance.

Despite the existence and availability of the abundance of other ADA/disabled parking spaces at the Arena on the date in question which were not blocked off, Plaintiff chose to park his van in a standard parking stall that was neither designed nor intended to serve as an accessible parking stall. He did not ask any Arena parking attendants to re-direct him to any of the other available accessible parking spaces on the site.

Plaintiff, his wife and two grandchildren traveled to the Arena entrance. To access the entrance, they traveled up an elevated walkway leading directly to the main entrance. Plaintiff contends, had he been able to use the blocked off ADA parking spaces, he could have accessed an elevator to gain entrance to the arena. However, the Arena entrance by the blocked off ADA parking spaces was immediately adjacent to the elevated walkway plaintiff and his family used to access the Arena, and easily could have been accessed by Plaintiff regardless of whether the ADA parking spaces by this entrance were blocked off. All elevators at the Arena were operational and available to Arena patrons on October 20, 2019.

Once they were inside the Arena, Plaintiff and his family were then directed to a designated ADA/disabled seating area. This area is specifically reserved for ADA seating only, and has a total capacity of 19 seats. In order to ensure available seating for disabled arena patrons, access to the ADA/disabled seating area for family and friends of disabled patrons is limited, and is situationally dependent upon the number of disabled individuals attending any given event.

Upon arriving at the seating area, Plaintiff contends he was advised by an Arena attendant he could only have one companion seat with him in the ADA/disabled seating area. As Plaintiff's grandchildren were with him, Plaintiff was advised the children would be permitted to sit on the laps of Plaintiff and his wife. Alternatively, Plaintiff contends he was advised his wife could sit immediately below the disabled seating area with the two grandchildren. However, these options were not acceptable to Plaintiff.

Plaintiff alleges a second Arena attendant then presented to the disabled seating area. Plaintiff contends the first attendant stated to this second attendant "we have a

troublemaker here." The situation was purportedly explained to the second attendant, though Plaintiff was ultimately not permitted to have his wife and two grandchildren all sit with him in separate seats in the disabled seating area. Accordingly, Plaintiff's wife opted to sit directly below the disabled seating area with the two grandchildren, in full view of the Plaintiff.

After the event was over, Plaintiff contends he exited the Arena with his wife and grandchildren. While the facts as to the post-ceremony events are in dispute, no version of these facts affects MOVING DEFENDANT'S right to summary judgment as a matter of law.

Plaintiff alleges, while traveling to an area where the graduates were gathering outside the Arena post-ceremony, he encountered a curb that prevented him from continuing along with the other people who were going to meet their graduates. After backtracking to a sidewalk ramp, Plaintiff contends he asked an Arena parking attendant to move/open a railing to allow him to access an area of the parking lot, but that this request was refused.

Finally, Plaintiff contends when he arrived back to his van with his family, the van was purportedly blocked in by adjacent vehicles, allegedly making him unable to get to his van. Plaintiff admits he and his family made choices that resulted in being parked for a period of time before he could enter his van in order to exit the Arena parking lot to travel home.

Despite the alleged events at the Arena on October 20, 2019, Plaintiff did not make a complaint or lodge a complaint with anyone at the Arena regarding these purported events. He simply chose to remain silent, and then sue.

## III.   **PLAINTIFF'S CLAIMS**

Based upon the foregoing alleged facts, Plaintiff has asserted a total of three causes of action against CITY OF ONTARIO, including the following: (1) Violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12181 et seq. as amended by the ADA Amendments Act of 2008 (P.L. 110-325); (2) Violations of the Unruh

Civil Rights Act, California Civil Code §51 et seq.; and (3) Negligent Infliction of Emotional Distress ("NIED"). Each of the Plaintiff's claims is subject to summary judgment.

## IV. STATEMENT OF LAW

### A. Federal Rules of Civil Procedure Authorize Summary Judgment as a Matter of Law

Federal Rules of Civil Procedure Rule 56 authorizes summary judgment as a matter of law. Said rule states in pertinent part as follows:

"(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law…"

In the instant action, MOVING DEFENDANT is entitled to judgment as a matter of law, as set forth in great detail herein below.

### B. City of Ontario did not Violate the Americans with Disabilities Act of 1990, 42  U.S.C. §12181 et seq.

Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D".

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

Further, under the ADA, any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, access aisles shall adjoin an accessible route. 2010 Standards § 502.3.

CACI 3070 establishes the elements of a claim under the law for denial of full and equal access to a business on a particular occasion, because of physical barrier, and states as follows:

"Defendant is the owner of an arena named Toyota Arena that is open to the public. Plaintiff is a disabled person who is paralyzed from his armpits down to his feet.

Plaintiff claims that he was denied full and equal access to Defendant's business on a particular occasion because of physical barriers. To establish this claim, Plaintiff must prove both of the following:

(1) That Defendant's business had barriers that violated construction-related accessibility standards in that [specify barriers]; and

(2) That Plaintiff personally encountered the violation on a particular occasion.

A violation that Plaintiff personally encountered may be sufficient to cause a denial of full and equal access if he experienced difficulty, discomfort, or embarrassment because of the violation."

In the instant action, Plaintiff contends an alleged failure by MOVING DEFENDANT to provide accessible parking spaces and an accessible route is a violation of the law. (See SAC attached as Exhibit "A" to Irwin Decl.). Plaintiff also alleges that a "public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a). (See SAC attached as Exhibit "A" to Irwin Decl.). Plaintiff further alleges "the failure to ensure that accessible facilities were available and ready to be used by Plaintiff is a violation of law." (See SAC attached as Exhibit "A" to Irwin Decl.).

Despite Plaintiff's contentions, he is unable to establish a violation of the ADA based upon the facts and the evidence in this action. (See Gibbens Decl. at ¶18). Plaintiff has no evidence that MOVING DEFENDANT failed in any form or fashion to "maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). That is because MOVING DEFENDANT at all times complied with the law, and maintained the Arena in accordance with the ADA. (See Gibbens Decl. at ¶¶ 18-45). Plaintiff other than citing applicable law within the operative complaint does not even allege a single specific feature of the Arena facilities and equipment which were not readily accessible to and usable by persons with disabilities. (See SAC attached as Exhibit "A" to Irwin Decl.).

With respect to Plaintiff's allegations that ONTARIO failed to provide accessible parking spaces and an accessible route at the Arena on the date in question, such

allegations are also baseless and without merit. Distilling Plaintiff's allegations down, he contends because eight ADA/disabled parking stalls at the Arena were blocked off upon his arrival on October 20, 2019, MOVING DEFENDANT violated the ADA. However, MOVING DEFENDANT did not violate the ADA on October 20, 2019. (See Gibbens Decl. at ¶ 18).

Eight disabled parking stalls were in fact blocked off for purposes of the graduation event held at the Arena on October 20, 2019. (See Shaw Decl. at ¶ 8). These stalls were located immediately outside the entrance to the Arena administration offices, which is not formally considered a general public Arena entrance. (See Shaw Decl. at ¶ 8). The eight disabled parking stalls were blocked off using metal bike rack type barricades on the date in question. (See Shaw Decl. at ¶ 9).

The parking stalls were blocked off as part of the standard Arena configuration/set-up for graduation events such as the one held on October 20, 2019. (See Shaw Decl. at ¶ 10). The purpose of blocking the eight disabled parking stalls is to create a secure and safe space in the parking lot immediately outside the arena where graduates can gather following a graduation ceremony. (See Shaw Decl. at ¶ 10).

Significantly, for any event where the Arena blocks off the eight disabled parking spaces in question in this case, *eight or more additional disabled parking spaces are created in the Northeast parking area at location A1 and A2.* (See Shaw Decl. at ¶ 11). Accordingly, while eight disabled parking spaces were blocked off when Plaintiff visited the Arena on October 20, 2019, eight additional spaces were created in the Northeast Arena parking area to compensate for this on said date. (See Shaw Decl. at ¶ 12). This occurred prior to Plaintiff even arriving at the Arena on the date of the alleged incident.

As such, on October 20, 2019, there were a total of no less than 31 disabled parking spaces available in Lots A1 and A2 to disabled Arena patrons. (See Shaw Decl. at ¶ 13). There were also an additional 4 disabled parking spaces located in Lot C2 on October 20, 2019. (See Shaw Decl. at ¶ 13). Further, an additional 10 disabled parking

spaces were available in Lot E2. (See Shaw Decl. at ¶ 13). Finally, an additional 23 disabled parking spaces were available in Lot F5. (See Shaw Decl. at ¶ 13).

Accordingly, while eight disabled parking spaces were blocked off on October 20, 2019, as Plaintiff alleges, *a total of no less than 68 disabled parking spaces were available at the Arena to Plaintiff and other disabled patrons for the October 20, 2019 graduation event.* (See Shaw Decl. at ¶ 14). This evidence establishes MOVING DEFENDANT did not fail in any respect to provide accessible parking spaces to disabled patrons such as Plaintiff on the date in question.

The act of blocking off eight disabled parking spaces at the Arena on October 20, 2019 was not a violation of the ADA. (See Gibbens Decl. at ¶ 30). Blocking off eight disabled parking stalls and in turn creating an additional eight disabled parking spaces in another portion of the Arena parking was not required by the ADA given the numerous other disabled parking spaces already available at the Arena. (See Gibbens Decl. at ¶ 31).

However, the act of creating eight additional disabled parking spaces in response to blocking off the eight spaces in question in this case was reasonable and demonstrated a focus by MOVING DEFENDANT on ensuring the rights of disabled patrons. (See Gibbens Decl. at ¶ 32). Further, there was no legal requirement under the ADA, or any other law, for MOVING DEFENDANT to place signage in the Arena parking lots directing disabled patrons to the locations of available disabled parking spaces. (See Gibbens Decl. at ¶ 33). Finally, contrary to Plaintiff's allegations, all available disabled parking spaces at the Arena on October 20, 2019 had accessible routes to the Arena entrances, which complied with the ADA. (See Gibbens Decl. at ¶ 34).

With respect to Plaintiff's additional allegations pertaining to alleged ADA violations by MOVING DEFENDANT, Plaintiff contends he was required to travel up walkways in order to gain access to the Arena. (See SAC attached to Irwin Decl. as Exhibit "A."). These walkways were created in compliance with the law, and the

existence of these walkways provided full and equal accommodations to Plaintiff as a disabled individual. (See Gibbens Decl. at ¶ 35). MOVING DEFENDANT was not required under the law to provide elevator access to disabled patrons in order to access the entrance to the Arena given the existence of the walkways, which provided full and equal accommodations to Plaintiff as a disabled individual. (See Gibbens Decl. at ¶ 36).

Once inside the arena, Plaintiff contends MOVING DEFENDANT violated the ADA by not accommodating his demands for three companion seats in the ADA seating area for his wife and two grandchildren. (See SAC attached to Irwin Decl. as Exhibit "A."). However, MOVING DEFENDANT was not required to accommodate these demands under the ADA, or any other law. (See Gibbens Decl. at ¶ 38). Plaintiff was permitted one companion seat in the ADA seating area, which was reasonable and did not violate the ADA. (See Gibbens Decl. at ¶ 39).

There was no legal requirement that Plaintiff's demand for four seats in the ADA seating area be met by MOVING DEFENDANT on the date in question, particularly in the absence of any advance request/notice by Plaintiff as to these seating accommodations. (See Gibbens Decl. at ¶ 40). As such, Plaintiff was not denied full and equal accommodations on the date in question with respect to the issues pertaining to Arena seating. (See Gibbens Decl. at ¶ 41).

Plaintiff further complains that following the graduation, when traveling in the Arena parking lot, MOVING DEFENDANT refused his alleged request to move a metal railing in order to allow him to travel into a different portion of the parking area. (See SAC, attached as Exhibit "A" to Irwin Decl.). However, there was no legal requirement under the ADA that this alleged railing be moved in order to accommodate Plaintiff's chosen path of travel outside the Arena. (See Gibbens Decl. at ¶ 43). This is particularly true given the purposes of the metal railing, which was to establish a safe area outside the Arena exit for graduates to gather following the graduation ceremony. (See Shaw Decl. at ¶ 10; See Gibbens Decl. at ¶ 43).

Plaintiff lastly complains that upon arriving at his vehicle following the graduation, his van was blocked by adjacent vehicles, causing him a delay in leaving the Arena premises. (See SAC, attached as Exhibit "A" to Irwin Decl.). However, given the availability of an abundance of disabled parking spaces at the Arena on the date in question in compliance with the ADA, the fact that Plaintiff's vehicle was allegedly blocked resulting in delay was ultimately the product of his own decision not to park in one of the available ADA parking spaces, and not the result of any violation of the ADA by MOVING DEFENDANT. (See Gibbens Decl. at ¶ 45). This delay was also the product of Plaintiff's own deliberate decision making, which included not simply having his wife or stepdaughter, both licensed drivers, enter the van to pull the vehicle out of the parking stall.

As the foregoing demonstrates, in the end, the entirety of Plaintiff's allegations regarding purported violations of the ADA by MOVING DEFENDANT are entirely baseless and without merit. ONTARIO is thus entitled to summary judgment as a matter of law, and this motion should be granted in its entirety.

C. **City of Ontario did not Violate the Unruh Civil Rights Act, California Civil Code §51 et seq.**

The Unruh Civil Rights Act is codified in *Civil Code* Section 51 et seq. Those sections state in pertinent part as follows.

"Section 51(b): All persons… are free and equal, and no matter what their… disability… are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Section 52(c): Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, the attorney general, any district

attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint."

CACI 3060 sets forth the essential factual elements of a claim for violation of the Unruh Civil Rights Act, as follows:

"Plaintiff claims that Defendant denied him full and equal accommodations because of his disability. To establish this claim, Plaintiff must prove all of the following:

(1) That Defendant denied full and equal accommodations to Plaintiff;

(2) That a substantial motivating reason for Defendant's conduct was its perception of Plaintiff's disability;

(3) That Plaintiff was harmed; and

(4) That Defendant's conduct was a substantial factor in causing Plaintiff's harm."

In the instant matter, just like the ADA, the facts and evidence do not and cannot establish a violation of the Unruh Civil Rights Act by MOVING DEFENDANT. There is no evidence whatsoever which establishes Plaintiff was denied full and equal accommodations at the Arena on October 20, 2019 because of his disability. (See Gibbens Decl. at ¶¶ 18-19).

As set forth in great detail hereinabove, none of the evidence in this case establishes ADA violations by ONTARIO, and for the same reasons, said evidence does not and cannot establish violations of the Unruh Civil Rights Act by MOVING DEFENDANT. (See Gibbens Decl. at ¶¶ 18-19). Disproving Plaintiff's ADA claims also acts to disprove Plaintiff's claims under the Unruh Civil Rights Act.

1    To reiterate:

2    Plaintiff contends eight disabled parking spaces at the Arena were blocked off

3    on the date in question. This was not only not a violation of the ADA, but there was an

4    abundance of other disabled parking spaces available to Plaintiff, including additional

5    disabled spaces specifically created to compensate for the eight spaces which were

6    blocked off. There was no denial of full and equal accommodations to Plaintiff as a

7    disabled individual. (See Gibbens Decl. at ¶¶ 18-19).

8    Plaintiff contends he was required to travel up walkways in order to gain access

9    to the Arena. These walkways were created in compliance with the law, and the

10   existence of these walkways provided full and equal accommodations to Plaintiff as a

11   disabled individual. (See Gibbens Decl. at ¶ 35). MOVING DEFENDANT was not

12   required under the law to provide elevator access to disabled patrons in order to access

13   the entrance to the Arena given the existence of the walkways. (See Gibbens Decl. at ¶

14   36).

15   Plaintiff was not unreasonably denied his request for three additional seats in the

16   ADA seating area to accommodate Plaintiff's wife and two grandchildren. (See

17   Gibbens Decl. at ¶ 38). There was no legal requirement that Plaintiff's demand for four

18   seats in the ADA seating area be met by MOVING DEFENDANT on the date in

19   question, particularly in the absence of any advance request/notice by Plaintiff as to

20   these seating accommodations. (See Gibbens Decl. at ¶ 40). As such, Plaintiff was not

21   denied full and equal accommodations on the date in question with respect to the issues

22   pertaining to Arena seating. (See Gibbens Decl. at ¶ 41).

23   Post-graduation, Plaintiff's request that an Arena attendant move a metal

24   railing/barrier was not unreasonably denied, and was not in violation of any law. (See

25   Gibbens Decl. at ¶ 43). There was no legal requirement that this alleged railing be

26   moved in order to accommodate Plaintiff's chosen path of travel outside the Arena.

27   (See Gibbens Decl. at ¶ 43).

28   / / /

Finally, that Plaintiff's vehicle was allegedly blocked by adjacently parked vehicles resulting in a choice by Plaintiff to delay his departure from the Arena was not the result of any violation of the ADA or the Unruh Civil Rights Act by MOVING DEFENDANT. (See Gibbens Decl. at ¶ 45). There were ample disabled parking spaces available at the Arena on October 20, 2019 which complied with the law. (See Gibbens Decl. at ¶ 29).

In the end, the facts and evidence in this case establish there was no denial of full and equal accommodations to Plaintiff at the Arena on October 20, 2019.  (See Gibbens Decl. at ¶¶ 18-19). Accordingly, Plaintiff cannot establish a claim for violation of the Unruh Civil Rights Act by MOVING DEFENDANT.

Even assuming, *arguendo*, that Plaintiff *could* establish a denial of full and equal accommodations (which he cannot), Plaintiff is still unable to meet the second element of an Unruh Act violation claim, "that a substantial motivating reason for Defendant's conduct was its perception of Plaintiff's disability." Plaintiff has not completed a single deposition in this case, and is unable to present any evidence to this Court of conduct by MOVING DEFENDANT denying him full and equal accommodations *substantially motivated by MOVING DEFENDANT'S perception of his disability.* That is because there is no such evidence in existence.

In the end, given the absence of any facts or evidence whatsoever which establish each of the elements of a claim for Violation of the Unruh Civil Rights Act, Plaintiff's claim in this regard fails. MOVING DEFENDANT is therefore entitled to summary judgment as a matter of law.

### D. <u>Plaintiff Cannot Establish a Viable Claim for Negligent Infliction of Emotional Distress Based upon the Facts of this Action.</u>

Negligent Infliction of Emotional Distress ("NIED") is not a separate tort but is merely negligence, to which the traditional elements apply. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.* (1989) 48 Cal. 3d 583, 588. To state a claim for negligence, a plaintiff must allege facts that support (1) that the defendants owed

plaintiffs a duty of care, (2) that the defendants breached that duty, (3) that the breach was the proximate cause of, (4) the resulting injury. See *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal. 3d 586, 594.

Under a claim for NIED, "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927-928).

CACI 1620 sets forth the specific essential factual elements required to establish a viable claim for NIED. Said section states as follows:

"Plaintiff claims that Defendant's conduct caused him to suffer serious emotional distress. To establish this claim, Plaintiff must prove all of the following:

(1) That Defendant was negligent;

(2) That Plaintiff suffered serious emotional distress; and

(3) That Defendant's negligence was a substantial factor in caused Plaintiff's serious emotional distress.

Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it."

"'The negligent causing of emotional distress is not an independent tort but the tort of negligence…' The traditional elements of duty, breach of duty, causation and damages apply." *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588.

/ / /

"'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205. "Serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927-928.

Despite plaintiff's allegations in this action, the facts of this case fail to establish, first, negligence by MOVING DEFENDANT and, second, serious mental distress resulting from negligence. As Plaintiff cannot establish the requisite elements of an NIED claim, said claim fails as a matter of law, entitling ONTARIO to summary judgment as a matter of law.

Analyzing the alleged actions by MOVING DEFENDANT on the date in question unequivocally establishes MOVING DEFENDANT and its agents did not act in a negligent fashion in any respect, such that a viable NIED claim exists.

Plaintiff first contends when he arrived at a disabled parking area, the first eight stalls he encountered were blocked off. It is not a violation of the ADA to block off a select number of available disabled parking spaces at a place of business such as the Arena for purposes of a specific event. (See Gibbens Decl. at ¶ 30). As such, the act of blocking off these spaces and not permitting Plaintiff to park in one of these eight spaces did not violate the law and therefore legally could not amount to negligence by ONTARIO.

The facts alleged by Plaintiff indicate he parked his vehicle in a standard parking stall that was neither designed nor intended to serve as an accessible parking stall. Plaintiff's decision to park in such a stall was just that, his own decision. As MOVING DEFENDANT ensured the availability of numerous disabled parking spaces at the Arena on October 20, 2019 beyond the eight spaces which were blocked, there was no violation of the law. (See Gibbens Decl. at ¶¶ 18-32). ONTARIO could not control

Plaintiff's decision making process in parking his vehicle. Further, under the law, MOVING DEFENDANT was not required to place signage in the Arena parking lots to provide direction to all available disabled parking spaces. (See Gibbens Decl. at ¶ 33). As such, the location where Plaintiff ultimately parked his vehicle on the date in question was not the product of negligence by MOVING DEFENDANT.

Plaintiff next contends he was required to travel up a walkway after parking his vehicle in order to access the Arena. MOVING DEFENDANT met its duty in providing an ADA compliant walkway from the sidewalk to the Arena entrance. (See Gibbens Decl. at ¶ 35). While Plaintiff complains that he was unable to access an elevator to enter the Arena because eight disabled parking spaces were blocked off, the doors by these spaces leading to an elevator were open and accessible to Plaintiff if he had chosen to walk/wheel to the doors, and an elevator inside said doors was operational and available on the date in question. (See Shaw Decl. at ¶¶ 19-20).

Again, MOVING DEFENDANT is not responsible for these decisions made by Plaintiff when he visited the Arena. Furthermore, given the existence and availability of the walkway leading from the sidewalk up to the main entrance of the Arena, MOVING DEFENDANT was not legally obligated to provide an elevator to Arena patrons such as Plaintiff in order to access Arena entrance. (See Gibbens Decl. at ¶ 36). Accordingly, ONTARIO could not legally be negligent in any form or fashion with respect to these issues either.

The next series of events relates to issues of seating inside the Arena. Plaintiff again alleges his request to have his wife and two children sit with him in the disabled seating area inside the arena was unreasonably denied. However, MOVING DEFENDANT was not required to provide accommodations for three companion seats in the disabled seating area under the law simply because Plaintiff demanded four seats. (See Gibbens Decl. at ¶ 38). Plaintiff provided MOVING DEFENDANT with no advance notice whatsoever prior to the graduation event as to his seating requirements. With no advance notice from Plaintiff, MOVING DEFENDANT'S decision to limit

seating in the ADA seating area to Plaintiff and one companion was reasonable, and did not violate the ADA. (See Gibbens Decl. at ¶ 39). Accordingly, as there was no violation of the law, MOVING DEFENDANT'S alleged actions in this regard could not legally constitute negligence.

Plaintiff next contends he was referred to by Arena staff as a "troublemaker." Assuming, *arguendo*, this is even true, such a comment does not constitute negligence under the law which would establish the basis of a claim for NIED.

With respect to the alleged occurrences following the conclusion of the graduation ceremony, said occurrences also do not establish negligence by MOVING DEFENDANT either. Plaintiff further alleges he asked an Arena attendant to move a railing in one of the Arena parking areas to allow him access to a different area of the parking lot, a request which was allegedly declined. As the facts establish the metal railing was placed by MOVING DEFENDANT in the parking area in order to ensure a safe gathering space for the graduates following the graduation ceremony, the refusal by an attendant to move metal railing was not unreasonable under the circumstances, and did not violate the ADA. (See Gibbens Decl. at ¶ 43; See also Shaw Decl. at ¶ 10). Accordingly, this alleged refusal did not constitute negligence.

Further, Plaintiff deliberately chose to wait for a period of time to access his vehicle following the graduation because the van was allegedly blocked on both sides by adjacently parked vehicles. The facts and evidence in this case establish this occurrence was not the result of a violation of the ADA, and thus was not the product of any negligent action or inaction by MOVING DEFENDANT. (See Gibbens Decl. at ¶ 45).

Finally, even if Plaintiff was able to establish negligence by MOVING DEFENDANT on the date in question, which he cannot, Plaintiff still cannot meet the legal standard of "serious mental distress" sufficient for NIED. Again, under a claim for NIED, "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by

the circumstances of the case." *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927-928). There is no evidence in this case of any actions by MOVING DEFENDANT which would have caused a reasonable man, normally constituted, to be unable to adequately cope with the mental stress engendered by the circumstances of this case.

Accordingly, based upon the fact that Plaintiff cannot establish negligence by MOVING DEFENDANT, and based further upon the fact that Plaintiff cannot meet the element of serious emotional distress required to establish a viable NIED claim, no meritorious claim for NIED exists in this action. ONTARIO is entitled to summary judgment as a matter of law.

## V.   **CONCLUSION**

Based upon the foregoing, Defendant CITY OF ONTARIO respectfully requests this Court grant the instant motion in its entirety, ordering judgment in favor of Defendant as a matter of law.

DATED:  July 22, 2021                  CARROLL, KELLY, TROTTER &
                                       FRANZEN


                             By: _____
                                 JOHN C. KELLY
                                 GABRIEL M. IRWIN
                                 Attorneys for Defendant CITY OF
                                 ONTARIO

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I hereby certify that on July 22, 2021, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** with the clerk of the United States District Court - Central District of California by using the Central District CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Central District of California CM/ECF system.

I further certify that some of the participants in the case may not be registered CM/ECF users.  I have mailed the foregoing **** by First-Class Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days, to the following non-CM/ECF participants: [*NONE*]

Dated:  July 22, 2021                                   *Jennifer Beasley*
                                                        Jennifer Beasley