**CARROLL, KELLY, TROTTER & FRANZEN**
**JOHN C. KELLY (SBN 125609)**
**GABRIEL M. IRWIN (SBN 210916)**
111 West Ocean Boulevard, 14th Floor
Post Office Box 226
Long Beach, California 90801-5636
Telephone No. (562) 432-5855 /
Facsimile No. (562) 432-8785
jckelly@cktflaw.com / gmirwin@cktflaw.com

Attorneys for Defendant, CITY OF ONTARIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TRIPPIEDI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ONTARIO, a government entity; and DOES 1-10, inclusive<br><br>Defendants. | CASE NO.:  5:20-CV-01190-AB-SHK<br><br>**DEFENDANT CITY OF ONTARIO'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ONLY**<br><br>[Filed concurrently with Separate Statement of Disputed and Undisputed Facts in Opposition; Declaration of Michael P. Gibbens; Supplemental Declaration of Michael P. Gibbens; Declaration of Christopher Shaw; Declaration of Gabriel M. Irwin]<br><br>DATE: August 27, 2021<br>TIME:  10:00 a.m.<br>COURTROOM: 7B<br><br>Discovery Cut-Off: 7-8-21<br>Pre-Trial Conf.: 11-19-21<br>Trial: 12-7-21<br><br>**Honorable  Andre Birotte, Jr.**<br>Complaint Filed:   6-11-20 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

DEFENDANT CITY OF ONTARIO HEREBY OPPOSES Plaintiff Daniel

Trippiedi's Motion for Partial Summary Judgment as to Liability Only. Said motion is first opposed on the grounds that the "undisputed facts" on which Plaintiff's motion is based are not in fact undisputed. Nearly every fact of any significance is disputed by plaintiff's wife and/or step-daughter. Furthermore, the pivotal "facts" regarding the events in question on which Plaintiff bases his claims of discrimination all constitute inadmissible hearsay. Based on these grounds alone, Plaintiff's motion should be denied in its entirety.

Defendant also opposes Plaintiff's motion on the grounds that Plaintiff has not legally established that Defendant CITY OF ONTARIO violated the Americans with Disabilities Act and/or the California Unruh Civil Rights Act, such that he is entitled to summary judgment as a matter of law.

Finally, Plaintiff's motion is opposed on the grounds that Plaintiff has not and cannot establish the legal elements of a claim for Negligent Infliction of Emotional Distress based upon the facts and evidence in this case. The motion should therefore also be denied on these grounds as well.

This Opposition is based upon the points and authorities set forth herein below, the Declaration of Michael P. Gibbens, the Supplemental Declaration of Michael P. Gibbens served concurrently herewith, and the report attached thereto, any matters of which this Court may take judicial notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court.

DATED:  August 6, 2021          CARROLL, KELLY, TROTTER &
                                FRANZEN


                                By: _____
                                    JOHN C. KELLY
                                    GABRIEL M. IRWIN
                                    Attorneys for Defendant CITY OF
                                    ONTARIO

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................**5**

II.     THERE ARE NO UNDISPUTED FACTS ON WHICH SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF WOULD BE PROPER ....................................**5**

      1.      Plaintiff's Account..............................................................**5**

      2.      Claudia Uribes's Account ..................................................6

      3.      Glendy Trippiedi's Account ................................................10

III.    THE MOST CRITICAL FACTS ON WHICH PLAINTIFF BASES HIS CLAIMS OF DISCRIMINATION ALL CONSTITUTE PURE INADMISSIBLE HEARSAY .......**13**

IV.     PLAINTIFF CANNOT ESTABLISH CITY OF ONTARIO VIOLATED THE AMERICANS WITH DISABILITIES ACT OF 1990 OR THE UNRUH CIVIL RIGHTS ACT ...........................................................................**14**

      a.      Alleged Failure to Comply with ADA Standard and Requirements for Alterations .................................................................**14**

      b.      Alleged Failure to Provide Meaningful Access ...................**19**

      c.      Alleged Denial of Reasonable Modification ........................**21**

      d.      Defendant did not Violate Title III of the ADA ...................**22**

      e.      The Unruh Civil Rights Act was not Violated.....................**22**

      f.      Plaintiff is Not Entitled to Injunctive Relief .......................**23**

V.      PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO HIS CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS...........................................................................**23**

VI.     CONCLUSION ......................................................................**27**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*Molski v. M.J. Cable, Inc.*  (9th Cir. 2007) 481 F.3d 724 ........................................................ 22

4

**Federal Statutes**

5

42 U.S.C. section 12182(a) ........................................................................................................ 22

6

**State Cases**

7

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*  (1989) 48 Cal.3d 583 .................... 23

8

*Molien v. Kaiser Foundation Hospitals*  (1980) 27 Cal.3d 916 ............................................... 23

*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*  (1970) 1 Cal.3d 586  .................... 23

9

**State Statutes**

10

Civ. Code, section 51(f) ............................................................................................................. 23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff's motion should be denied in its entirety. First and foremost, Plaintiff's motion fails as a matter of law based upon the fact that the "undisputed facts" on which Plaintiff's motion is based are not in fact undisputed. The major inconsistencies between the factual accounts of the events in question provided by Plaintiff and the plaintiff affiliated witnesses establish that Plaintiff's facts are not undisputed. Furthermore, the key "facts" on which Plaintiff bases his claims of discrimination are all pure inadmissible hearsay. There is no non-hearsay evidence to support these claims. As such, Summary Judgment in favor of Plaintiff would be inherently improper.

DEFENDANT also opposes Plaintiff's motion on the grounds that Plaintiff has not and cannot legally established that ONTARIO violated the Americans with Disabilities Act of 1990 and/or the California Unruh Civil Rights Act on October 20, 2019, such that he is entitled to Summary Judgment as a matter of law.

Finally, while Plaintiff is moving for Summary Judgment as to his NIED claim as well, the facts and evidence in this matter establish that no viable claim for NIED exists in this case, and certainly that Summary Judgment as to this claim specifically would be wholly inappropriate. Plaintiff's motion should therefore be denied on these grounds as well.

## II.    THERE ARE NO UNDISPUTED FACTS ON WHICH SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF WOULD BE PROPER

While Plaintiff within his Motion for Partial Summary Judgment has set forth facts on which the motion is based which are purportedly undisputed, the actual evidence in this case establishes Plaintiff's facts are very much disputed.

### 1. Plaintiff's Account

Plaintiff contends he arrived at the Arena on October 20, 2019 with his wife, step-daughter and two grandchildren. He contends he drove into the arena and encountered disabled parking spaces blocked by metal rails. (See Plaintiff's Statement

of Undisputed Facts ("SUF") at 14). Plaintiff contends he asked an attendant to move the rails, but was told he could not park there. (See Plaintiff's SUF at 15). Plaintiff contends he was told to continue down the road and another attendant would show him where to park. (See Plaintiff's SUF at 16).

As to relevant alleged facts for purposes of this Opposition, Plaintiff after the graduation contends he and his family exited the Arena and made their way outside back down the switchback ramp. (See Plaintiff's SUF at 41). Plaintiff alleges he then encountered a curb and metal guardrail that prevented him from reuniting with his stepdaughter where the rest of the Arena patrons were. (See Plaintiff's SUF at 42). Because of the curb and guardrail barrier, Plaintiff alleges he had to turn around and went back toward the parking lot, where they eventually met Plaintiff's step-daughter. (See Plaintiff's SUF at 43). Plaintiff then alleges he and his family proceeded to his van, where they encountered their vehicle blocked in by adjacent vehicles.

### 2. **Claudia Uribes's Account**

Significantly, the account of the events in question provided by Plaintiff's step-daughter Claudia Uribes under oath during her deposition in this action completely contradicts Plaintiff's version of these events. Not surprisingly, Ms. Uribes opted to change her testimony in material ways after the fact in an effort to alter the account of the events she gave under oath at the time of her deposition, an account which contradicted Plaintiff's account in nearly every way. However, even with these suspect changes, the testimony that stands continues to contradict Plaintiff, and establish disputed facts warranting a denial of Plaintiff's motion.

With respect to Plaintiff's allegedly "undisputed" facts, Ms. Uribes provided the following facts which completely contradict Plaintiff's version of the events in question, thereby creating *disputed* facts. :

"Q.    Before you were dropped off and before you got out of the van that day, did Mr. Trippiedi speak with anyone in the parking lot before you got out of the car?

| | | |
|---|---|---|
| 1 | A. | I don't know." (Uribes Depo at 32:14-17). |
| 2 | "Q. | And where did you find them [after the graduation ceremony], or where |
| 3 | | did you meet? |
| 4 | A. | <u>First person I saw were my kids and Daniel</u>. |
| 5 | Q. | And did they come up to you? |
| 6 | A. | No. They were waiting for people to get out. <u>They were still inside the</u> |
| 7 | | <u>arena</u> (answer subsequently changed via ERRATA to "I don't remember |
| 8 | | where they were when I met up with them.") |
| 9 | Q. | Just so I'm understanding, you were outside of the arena after the |
| 10 | | graduation, looking for your family, correct? |
| 11 | A. | <u>No. No. No. I was inside looking around.</u> |
| 12 | Q. | You were in the arena? |
| 13 | A. | Correct. |
| 14 | Q. | <u>And you found your kids and Mr. Trippiedi inside the arena</u>? |
| 15 | A. | <u>Correct</u> (answer subsequently changed via ERRATA to "I don't |
| 16 | | remember exactly where I met up with them.") |
| 17 | Q. | And did you speak with them at that point? |
| 18 | A. | Yes." (emphasis added)(Uribes Depo. at 37:8-24) |
| 19 | "Q. | Okay. <u>So after the graduation you located Mr. Trippiedi and your children</u> |
| 20 | | <u>inside the arena; is that right</u>? |
| 21 | A. | <u>Correct</u>. (Answer subsequently changed via ERRATA to "I don't |
| 22 | | remember if it was inside or outside.") |
| 23 | Q. | And what happened after you were able to locate them? |
| 24 | A. | <u>We waited till everyone was out of the way. We were trying to exit</u>. |
| 25 | | (answer subsequently changed via ERRATA to "We waited until the |
| 26 | | crowd was less, and then we started walking towards the van.") |
| 27 | Q. | Okay. So you were standing with your children and Mr. Trippiedi just |
| 28 | | kind of waiting until the crowd cleared out? |

| 1 | A. | Correct." (emphasis added) (Uribes Depo. at 38:14-25). |
| 2 | "Q. | And you were waiting for the crowd to clear so it would be easier for Mr. |
| 3 | | Trippiedi to exit? |
| 4 | A. | Correct. |
| 5 | Q. | And I'm sorry if I asked you this. I'm drawing a blank. How long did you |
| 6 | | wait at that time? |
| 7 | A. | Like five, ten minutes." (Uribes Depo. at 39:6-18). |
| 8 | "Q. | And after waiting five to ten minutes, you exited the arena? |
| 9 | A. | Correct. (subsequently changed via ERRATA to "I'm not sure exactly |
| 10 | | where we were at that point.") |
| 11 | Q. | <u>And you exited together with Mr. Trippiedi and your daughters</u>? |
| 12 | A. | <u>Correct</u>." (subsequently changted via ERRATA to "I'm not |
| 13 | | sure."(emphasis added)(Uribes Depo. at 40:1-6). |
| 14 | "Q. | <u>And after leaving or exiting the arena with Mr. Trippiedi and your</u> |
| 15 | | <u>children, where did you go?</u> |
| 16 | A. | <u>Towards the car.</u> |
| 17 | Q. | **<u>Did you walk down any ramps when you left the arena</u>**? |
| 18 | A. | **<u>No. No. There was no ramps.</u>**" (emphasis added)(Uribes Depo. at 40:12- |
| 19 | | 17). |
| 20 | "Q. | <u>Where did you go after walking out of the arena</u>? |
| 21 | A. | <u>Towards the parking lot.</u> |
| 22 | Q. | <u>Towards where the van was parked</u>? |
| 23 | A. | <u>Correct</u>." (emphasis added)(Uribes Depo. at 42:19-23) |
| 24 | "Q. | <u>From the time you exited the arena with Mr. Trippiedi and your daughters</u> |
| 25 | | <u>to the time you arrived at the van, did you stop for any reason in the</u> |
| 26 | | <u>parking lot</u>? |
| 27 | A. | <u>I mean, yes, we were waiting for the people to - - whoevers' vehicles - -</u> |
| 28 | | <u>they need to move those vehicles.</u>" (emphasis added)(Uribes Depo. at 44: |

22-25; 45:1-4).

The testimony provided in this action by Claudia Uribes establishes several important facts which contradict in significant ways Plaintiff's alleged undisputed facts. These facts and contradictions are as follows:

1. Plaintiff contends he encountered blocked off disabled parking spaces and that an attendant told him he could not park there. He contends an attendant told him to continue driving East at the Arena and another attendant would show him where to park. Ms. Uribes, who was in Plaintiff's van throughout this time, could not establish any of this even occurred.

2. One of the central allegations in this case is that after the graduation, Plaintiff exited the Arena, had to travel down switchback ramps which allegedly violate the ADA, and then encountered barriers which purportedly prevented him from gathering with the rest of the graduation crowd post-ceremony, and caused difficulties locating his step-daughter. Plaintiff further contends he requested these barriers be moved to accommodate his disability but that this request was denied. Ms. Uribes' testimony contradicts all of these alleged facts, thus calling into question the veracity of all aspects of Plaintiff's account of the events underlying this litigation. Even with all of Ms. Uribes's post-deposition material alterations to her testimony (which speak volumes about the merit of this case), this witness's testimony still establishes she met Plaintiff inside the arena, *not outside*, and exited together with him. (Uribes Depo. at 40:12-17).

3. Ms. Uribes testified after leaving the Arena with Mr. Trippiedi, they *never even walked down any switchback ramps after the graduation to exit the Arena.*

4. Ms. Uribes testified, after walking out of the Arena with Plaintiff, they did not stop until they arrived at Plaintiff's van, where they allegedly had to wait an extended of period of time because they chose not to back Plaintiff's van

out of the parking spot so that they could enter the vehicle. Mr. Trippiedi was never looking to find her outside, they did not encounter any metal barriers outside the arena, and Plaintiff never asked any Arena attendant to move any barriers, nor was any such request denied.

In the end, Ms. Uribes negates multiple aspects of the allegedly discriminatory treatment Plaintiff contends he encountered or received. She does not substantiate that a purported request by Plaintiff for an attendant to move a metal railing blocking a parking space was denied. She does not substantiate that Plaintiff was purportedly told to speak with another Arena attendant, who would tell Plaintiff where to park.

Ms. Uribes completely contradicts Plaintiff's entire post-graduation story about having to travel down switchback ramps, encountering a barrier that restricted his movement, having another request for removal of a barrier denied by an Arena attendant, and having difficulty finding his step-daughter. In essence, Ms. Uribes testified none of this even ever happened, and that she directly met up with Plaintiff <u>inside the arena</u>, <u>exited together,</u> <u>did not travel down any ramps</u>, and <u>went directly to the family vehicle</u> (this testimony is established even with her suspect ERRATA changes).

### 3. Glendy Trippiedi's Account

Plaintiff's wife Glendy Trippiedi has also been deposed in this matter and, not surprisingly, her testimony also contradicts Plaintiff's version of the alleged facts in question in this case, establishing disputed facts. What is also not surprising is Mrs. Trippiedi's deposition and testimony is not referenced *anywhere* in Plaintiff's motion at-issue. She significantly testified as follows:

"Q.   What's the first thing that happened upon your arrival at the Toyota arena on October 20, 2019.

A.   In the entrance there was a person saying "Welcome," and directing the traffic inside the parking lot. So they point to us, just go straight. So we went straight…And all the way in the end there was a parking lot of the

handicap area. It was totally blocked…We asked, "Where can we park? All this is blocked." He said, "Just park on this side." He point to where everybody parks." (Trippiedi Depo. at 22:14-25; 23:1).

Mrs. Trippiedi failed in all respects to substantiate Plaintiff's allegation that he asked an Arena attendant to move metal railing blocking disabled parking, and that this request was denied.

Mrs. Trippiedi also completely contradicts Plaintiff's account as to what transpired immediately prior to parking their vehicle at the Arena. Plaintiff alleges there was no attendant to direct him where to find an ADA accessible parking space. (See SUF at 19). Plaintiff further contends he did not circle back to try to find another attendant about finding another ADA space because he and his wife were concerned about being able to get a seat and be on time for the graduation ceremony. (See SUF at 21). However, Mrs. Trippiedi also contradicts all of these alleged facts, as follows:

"Q.     Did you speak with anyone working in that lot prior to parking?

A.      Yes.

Q.      And what did that person tell you?

A.      She just – he just point to the right side and say, "Just park. There is a lot of parking spaces available. Just park in any of this side," he say.

Q.      Did you ask – did you ask that person whether there was any handicapped spots available?

A.      Yes, we did ask for that. And he say, "Sorry. There is nothing available. Just park in this area."

Q.      So it is your testimony – it is your testimony that somebody working in the parking lot told you—

A.      Yes.

Q.      -- there was no handicapped parking available in the entire arena; is that right?

A.      Yes, that's right. Yes." (emphasis added)(Trippiedi Depo. at 26:4-22).

So, while Plaintiff's "facts" set forth that there was no attendant, and that he did not circle back before parking his vehicle to try to find another ADA space because he and his wife were in a rush, Mrs. Trippiedi contends there was an attendant, who they directly spoke to, and who allegedly told them there were no ADA parking spaces available anywhere, in any of the lots, surrounding the Arena. These are massively significant discrepancies which cast doubt upon all of the facts underlying this case. There are certainly no undisputed facts on which Plaintiff can base a Summary Judgment motion.

As to what occurred after entering the Arena, Mrs. Trippiedi also contradicts Plaintiff's account:

> "As soon as we approach there inside, the handicap was there in the back – all the way in the back. So we went through there. Then there was – the lady came in and said, "Oh, you can't be here." I say, "Why not? My husband is in a wheelchair and I am wearing a boot. I am temporarily disabled too and I have to be next to my husband. He needs sometimes helps with the medications." So she said, "No, you cannot be here."…So the manager came and she say, "Yes, you can't be here." (Trippiedi Depo. at 24:25; 25:1-13).

Per *Plaintiff's account*, he and his wife were never told she could not be with him in the ADA seating area inside the Arena. She was never told she could not sit as a companion with Plaintiff in the ADA area. The issue, per Plaintiff, was having *three companions* in the ADA seating area, not that the wife could not be there. Mrs. Trippiedi's account does not mirror that of her husband's, creating facts in dispute.

With respect to what occurred after the graduation, Mrs. Trippiedi's testimony in this case again contradicts Plaintiff's allegedly "undisputed" facts, as follows:

> "Q.   And after the ceremony ended did you walk up and meet him [plaintiff] in the disabled seating area?
>
> A.   Yes. He wait for me where he was sitting and we got together. I get out of

there, roll him down below…We went down to the car and we couldn't find my daughter. So we walk to see if we can see all the way – and went to parking lot that – we couldn't see anything. We roll back over. Finally we saw her. We went to the car and the car was blocked both sides because it was packed." (Trippiedi Depo. at 32:14-25).

According to Mrs. Trippiedi, she personally rolled Plaintiff out of the arena, to the parking lot, and to the car. She was with him the entire time. Plaintiff's allegations that he specifically encountered a metal barrier post-graduation in the parking lot, that he asked an attendant to move the barrier, which was denied, <u>are nowhere to be found in the account of what occurred provided under oath in this case by Glendy Trippiedi.</u> There are no undisputed facts on which to base a Plaintiff's Summary Judgment motion in this action.

In the end, nearly every fact of any significance set forth by Plaintiff in his motion at-issue is contradicted by Plaintiff's wife and/or step-daughter. As such, this entire case is cast into doubt. The veracity of Plaintiff and his story will be closely evaluated by a jury, which will make a determination as to what ultimately did or did not happen. Obviously there are no undisputed facts on which to base Plaintiff's Motion for Summary Judgment. The motion should therefore be denied in its entirety.

## III.  THE MOST CRITICAL FACTS ON WHICH PLAINTIFF BASES HIS CLAIMS OF DISCRIMINATION ALL CONSTITUTE PURE INADMISSIBLE HEARSAY

As is set forth in detail within the concurrently served Statement of Disputed and Undisputed Material Facts, and as addressed within the Evidentiary Objections served herewith, the most critical "facts" on which Plaintiff bases his claims of discrimination all constitute pure inadmissible hearsay. This includes all of the alleged discriminatory acts and statements purportedly made or undertaken by parking attendants and arena attendants. This includes alleged statements that attendants would not move metal barriers, statements that attendants would not accommodate Plaintiff's party inside the

arena, and alleged statements by staff that Plaintiff was a "troublemaker." As such hearsay cannot be relied upon to establish the truth of the matters asserted, Plaintiff's claims of discrimination fall flat. His motion should therefore be denied in its entirety.

## IV.   PLAINTIFF CANNOT ESTABLISH CITY OF ONTARIO VIOLATED THE AMERICANS WITH DISABILITIES ACT OF 1990 OR THE UNRUH CIVIL RIGHTS ACT

Plaintiff within his motion contends that DEFENDANT violated the ADA because there were accessibility barriers at the Arena allegedly encountered by Plaintiff on October 20, 2019. Plaintiff also contends his expert not only has purportedly confirmed the barriers Plaintiff allegedly encountered, but has also identified "a number of other accessibility barriers at the Arena that would prevent Plaintiff from having meaningful access to the Arena." (See Motion for Partial Summary Judgment at 7:7-8).

Nearly all of these purported violations have nothing whatsoever with the alleged events in question which underlie this lawsuit, and have never been experienced or encountered by Plaintiff. Further, the expert report relied upon by Plaintiff which Plaintiff contends establishes potential ADA violations has no foundation whatsoever, and is thus inadmissible as a matter of law. (See Supp. Gibbons Decl.).

Plaintiff contends DEFENDANT violated the ADA and engaged in discrimination against him under three theories of liability: 1) the alleged failure to alter the public facilities of the Arena in a manner such that they are readily accessible to and usable by people with disabilities; 2) the alleged failure to provide Plaintiff with meaningful access to the public facilities of the Arena; and 3) the alleged failure to provide "reasonable modifications" to Plaintiff upon request. (See Motion for Partial Summary Judgment at 13:4-9).

### a. Alleged Failure to Comply with ADA Standard and Requirements for Alterations

Plaintiff contends DEFENDANT violated the ADA in multiple ways. In his motion, he cites issues with parking signage and direction, dimensions of parking

spaces, maintenance of parking spaces, paths of travel, the pedestrian ramp, and the interior seating area. Plaintiff also argues DEFENDANT lacks policies or procedures regarding Arena accessibility, maintenance, staff training, and others.

First, the ADA does not require specific policies and procedures as to the issues raised by Plaintiff in his motion. Plaintiff cites no law which establishes such a requirement. Consequently, while Plaintiff goes to great lengths to disparage DEFENDANT relative to this issue, this is an obvious effort to misguide and confuse this Court as to the actual issues in this case. The issue is a red herring.

Second, DEFENDANT has established that the ADA was not violated. (See Gibbons Decl. at ¶¶ 19. 23). As referenced herein above, the expert report from Janis Kent relied upon by Plaintiff which Plaintiff contends establishes potential ADA violations has no foundation whatsoever, and is thus inadmissible as a matter of law. (See Supp. Gibbons Decl.). Further, there is nothing which would substantiate a claim that DEFENDANT failed in any form or fashion to maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. (See Gibbons Decl. at ¶ 23). There is nothing to establish that even a single feature of the Arena facilities and/or equipment were not readily accessible to and usable by persons with disabilities on October 20, 2019. (See Gibbons Decl. at ¶ 24).

With respect to Plaintiff's allegations that DEFENDANT failed to provide accessible parking spaces and an accessible route at the Arena on the date in question, such allegations are also baseless and without merit. Distilling Plaintiff's allegations down, he contends because eight ADA/disabled parking stalls at the Arena were blocked off upon his arrival on October 20, 2019, MOVING DEFENDANT violated the ADA. However, DEFENDANT did not violate the ADA on October 20, 2019. (See Gibbens Decl. at ¶ 18).

Eight disabled parking stalls were in fact blocked off for purposes of the graduation event held at the Arena on October 20, 2019. (See Shaw Decl. at ¶ 8). These

stalls were located immediately outside the entrance to the Arena administration offices, which is not formally considered a general public Arena entrance. (See Shaw Decl. at ¶ 8). The eight disabled parking stalls were blocked off using metal bike rack type barricades on the date in question. (See Shaw Decl. at ¶ 9).

The parking stalls were blocked off as part of the standard Arena configuration/set-up for graduation events such as the one held on October 20, 2019. (See Shaw Decl. at ¶ 10). The purpose of blocking the eight disabled parking stalls is to create a secure and safe space in the parking lot immediately outside the arena where graduates can gather following a graduation ceremony. (See Shaw Decl. at ¶ 10).

Significantly, for any event where the Arena blocks off the eight disabled parking spaces in question in this case, eight or more additional disabled parking spaces are created in the Northeast parking area at location A1 and A2. (See Shaw Decl. at ¶ 11).

Accordingly, while eight disabled parking spaces were blocked off when Plaintiff visited the Arena on October 20, 2019, eight additional spaces were created in the Northeast Arena parking area to compensate for this on said date. (See Shaw Decl. at ¶ 12). This occurred prior to Plaintiff even arriving at the Arena on the date of the alleged incident.

As such, on October 20, 2019, there were a total of no less than 31 disabled parking spaces available in Lots A1 and A2 to disabled Arena patrons. (See Shaw Decl. at ¶ 13). There were also an additional 4 disabled parking spaces located in Lot C2 on October 20, 2019. (See Shaw Decl. at ¶ 13). Further, an additional 10 disabled parking spaces were available in Lot E2. (See Shaw Decl. at ¶ 13). Finally, an additional 23 disabled parking spaces were available in Lot F5. (See Shaw Decl. at ¶ 13).

Accordingly, while eight disabled parking spaces were blocked off on October 20, 2019, as Plaintiff alleges, a total of no less than 68 disabled parking spaces were available at the Arena to Plaintiff and other disabled patrons for the October 20, 2019 graduation event. (See Shaw Decl. at ¶ 14). This evidence establishes DEFENDANT

1  did not fail in any respect to provide accessible parking spaces to disabled patrons such

2  as Plaintiff on the date in question.

3      The act of blocking off eight disabled parking spaces at the Arena on October

4  20, 2019 was not a violation of the ADA. (See Gibbens Decl. at ¶ 30). Blocking off

5  eight disabled parking stalls and in turn creating an additional eight disabled parking

6  spaces in another portion of the Arena parking was not required by the ADA given the

7  numerous other disabled parking spaces already available at the Arena. (See Gibbens

8  Decl. at ¶ 31).

9      However, the act of creating eight additional disabled parking spaces in response

10  to blocking off the eight spaces in question in this case was reasonable and

11  demonstrated a focus by MOVING DEFENDANT on ensuring the rights of disabled

12  patrons. (See Gibbens Decl. at ¶ 32). Further, there was no legal requirement under the

13  ADA, or any other law, for MOVING DEFENDANT to place signage in the Arena

14  parking lots directing disabled patrons to the locations of available disabled parking

15  spaces. (See Gibbens Decl. at ¶ 33). Finally, contrary to Plaintiff's allegations, all

16  available disabled parking spaces at the Arena on October 20, 2019 had accessible

17  routes to the Arena entrances, which complied with the ADA. (See Gibbens Decl. at ¶

18  34).

19      With respect to Plaintiff's additional allegations pertaining to alleged ADA

20  violations by MOVING DEFENDANT, Plaintiff contends he was required to travel up

21  walkways in order to gain access to the Arena. (See SAC attached to Irwin Decl. as

22  Exhibit "A."). These walkways were created in compliance with the law, and the

23  existence of these walkways provided full and equal accommodations to Plaintiff as a

24  disabled individual. (See Gibbens Decl. at ¶ 35). DEFENDANT was not required under

25  the law to provide elevator access to disabled patrons in order to access the entrance to

26  the Arena given the existence of the walkways, which provided full and equal

27  accommodations to Plaintiff as a disabled individual. (See Gibbens Decl. at ¶ 36).

28

Once inside the arena, Plaintiff contends DEFENDANT violated the ADA by not accommodating his demands for three companion seats in the ADA seating area for his wife and two grandchildren. (See SAC attached to Irwin Decl. as Exhibit "A."). All of these allegations are based upon pure inadmissible hearsay, and there are no undisputed facts. Further, DEFENDANT was not required to accommodate these demands under the ADA, or any other law. (See Gibbens Decl. at ¶ 38). Plaintiff was permitted one companion seat in the ADA seating area, which was reasonable and did not violate the ADA. (See Gibbens Decl. at ¶ 39).

There was no legal requirement that Plaintiff's demand for four seats in the ADA seating area be met by DEFENDANT on the date in question, particularly in the absence of any advance request/notice by Plaintiff as to these seating accommodations. (See Gibbens Decl. at ¶ 40). As such, Plaintiff was not denied full and equal accommodations on the date in question with respect to the issues pertaining to Arena seating. (See Gibbens Decl. at ¶ 41).

Plaintiff further complains that following the graduation, when traveling in the Arena parking lot, DEFENDANT refused his alleged request to move a metal railing in order to allow him to travel into a different portion of the parking area. (See SAC, attached as Exhibit "A" to Irwin Decl.). Such an alleged act of discrimination is pure inadmissible hearsay, and completely lacking in foundation. In addition, there was no legal requirement under the ADA that this alleged railing be moved in order to accommodate Plaintiff's chosen path of travel outside the Arena. (See Gibbens Decl. at ¶ 43). This is particularly true given the purposes of the metal railing, which was to establish a safe area outside the Arena exit for graduates to gather following the graduation ceremony. (See Shaw Decl. at ¶ 10; See Gibbens Decl. at ¶ 43).

Plaintiff lastly complains that upon arriving at his vehicle following the graduation, his van was blocked by adjacent vehicles, causing him a delay in leaving the Arena premises. (See SAC, attached as Exhibit "A" to Irwin Decl.). However, given the availability of an abundance of disabled parking spaces at the Arena on the date in

question in compliance with the ADA, the fact that Plaintiff's vehicle was allegedly blocked resulting in delay was ultimately the product of his own decision not to park in one of the available ADA parking spaces, and not the result of any violation of the ADA by MOVING DEFENDANT. (See Gibbens Decl. at ¶ 45). This delay was also the product of Plaintiff's own deliberate decision making, which included not simply having his wife or stepdaughter, both licensed drivers, enter the van to pull the vehicle out of the parking stall.

As the foregoing demonstrates, in the end, the entirety of Plaintiff's allegations regarding purported violations of the ADA by DEFENDANT are entirely baseless and without merit. Plaintiff's Motion for Partial Summary Judgment should therefore be denied in its entirety.

### b.  Alleged Failure to Provide Meaningful Access

Contrary to Plaintiff's arguments found within his motion at-issue, there is very much a genuine issue of material fact as to whether DEFENDANT provided Plaintiff with meaningful access to the public facilities of the Arena. In fact, DEFENDANT did comply with regulatory requirements regarding the identification and removal of structural barriers to the Arena. Further, no failures by DEFENDANT resulted in structural barriers to the Arena's facilities to exist which prevented Plaintiff from having meaningful access to and use of the Arena.

As to this issue, Plaintiff cites Department of Justice regulations implementing Title II which requires public entities to (1) conduct a self-evaluation of its programs by January 26, 1993; (2) develop a transition plan by no later than July 26, 1992 setting forth the steps necessary to complete the structural changes required to achieve program accessibility; and (3) remove the physical barriers that limit or deny access to its programs by no later than January 26, 1995. (See Motion for Partial Summary Judgment at 15:7-13). However, all of this is irrelevant, misleading, and ultimately utterly pointless.

Plaintiff concedes the Arena was constructed in 2008, which would make all

three of the above-referenced regulations irrelevant. The Arena was constructed in compliance with the ADA in 2008, such that there has never been a need to either (1) conduct a self-evaluation of its programs; (2) develop a transition plan; or (3) remove physical barriers that limit or deny access to its programs. Plaintiff's contention in his motion that DEFENDANT has been "severely delinquent to its legal obligations and inattentive to accessibility requirements" under the ADA is a completely baseless allegation not rooted in any actual facts or evidence. DEFENDANT has been and is in compliance with the ADA. (See Gibbons Decl.).

Further, Plaintiff was not denied meaningful access to the Arena on October 20, 2019 as a result of any alleged access barriers. (See Gibbons Decl.). The fact that Plaintiff allegedly "experienced difficulty, embarrassment and frustration trying to use the facilities at the Arena" does not establish an ADA violation, or legally establish that Plaintiff's rights were violated. Further, the expert report on which Plaintiff bases his claims is utterly lacking in foundation and is inadmissible.

A total of eight accessible parking stalls were blocked on the date in question, which did not constitute a violation of the ADA. (See Gibbons Decl.). Plaintiff contends he was "unable to find and was not directed to other accessible parking." (See Motion for Partial Summary Judgment at 16:3-4). The undisputed evidence in this case establishes Plaintiff did not even try to find other accessible parking. (See Deposition of Plaintiff). Plaintiff complains he was not directed to an elevator and experienced difficult using the ramp to enter the building. (See Motion for Partial Summary Judgment at 16:4-5). The ADA did not require direction to an elevator, and the walkway provided ADA compliant access to the Arena. (See Gibbons Decl.). Plaintiff contends he and his family were denied companion seating, though this is not accurate (Plaintiff was permitted one companion), and the ADA was not violated by not accommodating Plaintiff's demand for three companion seats on the date in question. (See Gibbons Decl.).

Lastly, Plaintiff complains that he encountered inaccessible routes to reunite with

his stepdaughter while exiting the Arena because routes were blocked by more guardrails and curbs, which he contends is an issue not in dispute. (See  Motion for Partial Summary Judgment at 16:6-8). Plaintiff's own family cannot get their stories straight as to the events occurring after the graduation, as set forth in detail herein above. All of these issues are heavily in dispute, and Plaintiff's motion should be denied in its entirety.

### c.  Alleged Denial of Reasonable Modification

Plaintiff in his motion also argues DEFENDANT had an affirmative obligation under Title II of the ADA to undertake barrier removal as a "reasonable modification" in response to a request by, or on behalf of, someone with a disability. (See Motion for Partial Summary Judgment at 16:17-20). He further argues he provided DEFENDANT with actual notice of the barriers he encountered at the Arena and asked that these obstacles be removed on April 1, 2020, requests which he contends were denied. (See Motion for Partial Summary Judgment at 16:22-25).

In support of his motion, Plaintiff has attached a copy of the Claim for Damages he submitted to DEFENDANT on April 1, 2020 (See Ex. D to Manning Decl.). The Claim alleges "Parking attendants at the Toyota Arena refused to allow Claimant to park in a designated, reserved disabled parking stall and directed him to park in a lot with no designated parking. Claimant was forced to ambulate through paths of traffic to access the ramp leading to the entrance of the arena." (See Ex. D to Manning Decl.).

First, the evidence in this case establishes Plaintiff was not directed to park in a lot with no designated parking, but that he himself chose to park in a non-accessible parking stall without so much as even asking anyone where he should go to locate any of the numerous available ADA compliant parking spaces. Second, Plaintiff was not forced to ambulate through paths of traffic to access the ramp leading to the entrance of the arena. This is the path he personally chose because of where he personally chose to park. *These acts or omissions were the result of Plaintiff's own intentional choices.* He had many, many other options but opted to do nothing whatsoever to determine what

**DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

they were.

Second, there are no modifications even available which have been denied by DEFENDANT. The eight disabled parking spaces which were blocked off at the Arena on October 20, 2019, are not and have never been permanently blocked. Ultimately, Plaintiff's argument regarding the alleged denial of reasonable modification is superfluous and totally irrelevant.

### d. Defendant did not Violate Title III of the ADA

With respect to the ADA, Plaintiff within his motion lastly argues that DEFENDANT violated Title III of the ADA. Plaintiff argues that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." 42 U.S.C. § 12182(a). However, Plaintiff also cannot establish a Title III violation based upon the facts and evidence in this case, such that his Motion should be denied on these grounds as well.

Specifically, Plaintiff has not and cannot establish that DEFENDANT "discriminated against him by denying him a full and equal opportunity to enjoy the goods, services, facilities, privileges, advantages, or accommodations defendant provides." *Molski v. M.J. Cable, Inc.* 481 F.3d 724,730. While he claims in his motion the occurrence of this discrimination is undisputed, nothing could be more inaccurate. The Declaration of DEFENDANT'S expert Michael Gibbons served concurrently herewith and referenced in detail herein above establishes that there is no evidence of any alleged denial of a full and equal opportunity to enjoy the goods, services, facilities, privileges, advantages, or accommodations by DEFENDANT. As such, there in fact was no violation of Title III of the ADA as Plaintiff contends.

### e. The Unruh Civil Rights Act was not Violated

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a

violation of this section." Civ. Code §51(f). However, as DEFENDANT has established the absence of any ADA violation in this case, no viable claim for violation of the Unruh Civil Rights Act exists. Plaintiff's motion should therefore be denied in its entirety.

### f. Plaintiff is Not Entitled to Injunctive Relief

As DEFENDANT has established based upon the disputed facts in this case and based upon the entirety of the evidence it did not violate the ADA, including neither Title II or Title III, there is no basis whatsoever for a claim for injunctive relief. The Arena has been and continues to be accessible to and usable by persons with disabilities. Plaintiff was not subject to discrimination as a result of his disability in the past, nor would he be denied meaningful access to the Arena in the future, in the unlikely event he even ever returns.

## V.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO HIS CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Negligent Infliction of Emotional Distress ("NIED") is not a separate tort but is merely negligence, to which the traditional elements apply. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.* (1989) 48 Cal. 3d 583, 588. To state a claim for negligence, a plaintiff must allege facts that support (1) that the defendants owed plaintiffs a duty of care, (2) that the defendants breached that duty, (3) that the breach was the proximate cause of, (4) the resulting injury. See *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal. 3d 586, 594.

Under a claim for NIED, "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927-928).

Despite Plaintiff's allegations in this action, the facts of this case fail to establish, first, negligence by DEFENDANT and, second, serious mental distress resulting from negligence. As Plaintiff cannot establish the requisite elements of an NIED claim, said

1  claim fails as a matter of law, and on this basis, Plaintiff's motion at-issue should be
2  denied.
3  / / /
4      Analyzing the alleged actions by DEFENDANT on the date in question
5  unequivocally establishes DEFENDANT and its agents did not act in a negligent
6  fashion in any respect, such that a viable NIED claim exists.
7      Plaintiff first contends when he arrived at a disabled parking area, the first eight
8  stalls he encountered were blocked off. However, it is not a violation of the ADA to
9  block off a select number of available disabled parking spaces at a place of business
10 such as the Arena for purposes of a specific event. (See Gibbens Decl. at ¶ 30). As such,
11 the act of blocking off these spaces and not permitting Plaintiff to park in one of these
12 eight spaces did not violate the law and therefore legally could not amount to negligence
13 by ONTARIO.
14      Plaintiff contends he asked a parking attendant to move a metal blockage to
15 permit him to park in an accessible parking space, but that the attendant responded that
16 he could not park there. This alleged occurrence constitutes pure inadmissible hearsay.
17      The facts alleged by Plaintiff indicate he parked his vehicle in a standard parking
18 stall that was neither designed nor intended to serve as an accessible parking stall.
19 Plaintiff's decision to park in such a stall was just that, his own decision. As MOVING
20 DEFENDANT ensured the availability of numerous disabled parking spaces at the
21 Arena on October 20, 2019 beyond the eight spaces which were blocked, there was no
22 violation of the law. (See Gibbens Decl. at ¶¶ 18-32). With  no violation of the law,
23 there was no negligence.
24      ONTARIO could not control Plaintiff's decision making process in parking his
25 vehicle. Further, under the law, DEFENDANT was not required to place signage in the
26 Arena parking lots to provide direction to all available disabled parking spaces. (See
27 Gibbens Decl. at ¶ 33). As such, the location where Plaintiff ultimately parked his
28 vehicle on the date in question was not the product of negligence by DEFENDANT.

Plaintiff next contends he was required to travel up a walkway after parking his vehicle in order to access the Arena. DEFENDANT met its duty in providing an ADA compliant walkway from the sidewalk to the Arena entrance. (See Gibbens Decl. at ¶ 35). While Plaintiff complains that he was unable to access an elevator to enter the Arena because eight disabled parking spaces were blocked off, the doors by these spaces leading to an elevator were open and accessible to Plaintiff if he had chosen to walk/wheel to the doors, and an elevator inside said doors was operational and available on the date in question. (See Shaw Decl. at ¶¶ 19-20).

Again, MOVING DEFENDANT is not responsible for these decisions made by Plaintiff when he visited the Arena. Furthermore, given the existence and availability of the walkway leading from the sidewalk up to the main entrance of the Arena, MOVING DEFENDANT was not legally obligated to provide an elevator to Arena patrons such as Plaintiff in order to access Arena entrance. (See Gibbens Decl. at ¶ 36). Accordingly, ONTARIO could not legally be negligent in any form or fashion with respect to these issues either.

The next series of events relates to issues of seating inside the Arena. Plaintiff again alleges his request to have his wife and two children sit with him in the disabled seating area inside the arena was unreasonably denied. This all constitutes pure inadmissible hearsay. Further, DEFENDANT was not required to provide accommodations for three companion seats in the disabled seating area under the law simply because Plaintiff demanded four seats. (See Gibbens Decl. at ¶ 38). Plaintiff provided DEFENDANT with no advance notice whatsoever prior to the graduation event as to his seating requirements. With no advance notice from Plaintiff, DEFENDANT'S decision to limit seating in the ADA seating area to Plaintiff and one companion was reasonable, and did not violate the ADA. (See Gibbens Decl. at ¶ 39). Accordingly, as there was no violation of the law, MOVING DEFENDANT'S alleged actions in this regard could not legally constitute negligence.

Plaintiff next contends he was referred to by Arena staff as a "troublemaker." This constitutes pure inadmissible hearsay. Further, such an alleged comment does not constitute negligence under the law which would establish a recognized legal basis for an NIED claim.

With respect to the alleged occurrences following the conclusion of the graduation ceremony, said occurrences also do not establish negligence by DEFENDANT. Again, Plaintiff alleges he asked an Arena attendant to move a railing in one of the Arena parking areas to allow him access to a different area of the parking lot, a request which was allegedly declined. As discussed herein, this is a heavily disputed fact. However, as facts establish metal railing was placed by DEFENDANT in the parking area in order to ensure a safe gathering space for the graduates following the graduation ceremony, any alleged refusal by an attendant to move metal railing, if this even occurred, was not unreasonable under the circumstances, and did not violate the ADA. (See Gibbens Decl. at ¶ 43; See also Shaw Decl. at ¶ 10). Accordingly, this alleged refusal did not constitute negligence.

Further, Plaintiff deliberately chose to wait for a period of time to access his vehicle following the graduation because the van was allegedly blocked on both sides by adjacently parked vehicles. The facts and evidence in this case establish this occurrence was not the result of a violation of the ADA, and thus was not the product of any negligent action or inaction by MOVING DEFENDANT. (See Gibbens Decl. at ¶ 45).

Finally, even if Plaintiff was able to establish negligence by MOVING DEFENDANT on the date in question, which he cannot, Plaintiff still cannot meet the legal standard of "serious mental distress" under the reasonable person standard sufficient for NIED. In an effort to meet the standard of mental distress required under an NIED claim, Plaintiff has submitted a completely objectionable letter from a Licensed Clinical Social Worker, Jennifer R. Mauceri which lacks any sort of foundation. This letter constitutes pure hearsay and cannot be considered.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1    However, said correspondence also does not legally establish serious mental
2  distress caused specifically by the alleged events in this case (most of which are in
3  dispute), nor does the letter establish that a reasonable man, normally constituted, would
4  be unable to adequately cope with the mental stress engendered by the circumstances
5  of this case. These circumstances are essentially all in controversy. Further, the
6  reasonable man standard underlying the NIED claim is an issue for jury determination.
7  This is a standard that must be assessed by a jury of Plaintiff's peers.

## VI.    <u>CONCLUSION</u>

9    Based upon the foregoing, defendant CITY OF ONTARIO respectfully requests
10  this Court deny Plaintiff's Motion for Partial Summary Judgment as to Liability in its
11  entirety.

12  DATED:  August 6, 2021          CARROLL, KELLY, TROTTER &
                                    FRANZEN

                                    By: _____
                                        JOHN C. KELLY
                                        GABRIEL M. IRWIN
                                        Attorneys for Defendant CITY OF
                                        ONTARIO

## <u>CERTIFICATE OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I hereby certify that on August 6, 2021, I electronically filed the foregoing **DEFENDANT CITY OF ONTARIO'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ONLY** with the clerk of the United States District Court - Central District of California by using the Central District CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Central District of California CM/ECF system.

I further certify that some of the participants in the case may not be registered CM/ECF users. I have mailed the foregoing **** by First-Class Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days, to the following non-CM/ECF participants:

[*NONE*]

Dated: August 6, 2021_____*Jennifer Beasley*_
                                                                        JENNIFER BEASLEY